IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| PAULA J. ELLIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | NO. 7:09-CV-70-O-BF |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

The District Court referred this case to the United States Magistrate Judge for findings, conclusions, and recommendation, pursuant to 28 U.S.C. § 636(b). This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Paula J. Ellis ("Plaintiff") for Supplemental Security Income disability benefits ("SSI") under Title XVI of the Social Security Act ("Act"). The Court considered "Brief for Plaintiff," filed November 2, 2009, and "Defendant's Brief," filed December 2, 2009. The Court has reviewed the parties' evidence in connection with the pleadings and the applicable law, and hereby recommends that the decision of the ALJ be **REVERSED** and **REMANDED** for further consideration.

## I.  Background[1]

### A.     *Procedural History*

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of Defendant Commissioner's denial of Plaintiff's claim for disability benefits under Title XVI of the Social Security Act.  Venue is proper in the Wichita Falls Division of the Northern District of Texas.

Plaintiff filed for SSI on November 18, 2005.  (Tr. 76-78.)  Plaintiff's application for disability benefits was denied upon initial review and upon reconsideration.  (Tr. 50-61.)  After the denials, Plaintiff requested and received hearings before Administrative Law Judge ("ALJ") Lance K. Hiltbrand on December 6, 2007, and on March 18, 2008.  (Tr. 21-47, 5-15.)  Plaintiff was represented by counsel at the hearing.  (Tr. 23.)  On March 18, 2008, ALJ Hiltbrand issued a denial of Plaintiff's claim for benefits.  (Tr. 15.)  The ALJ's decision became the final administrative decision after the Appeals Council denied Plaintiff's requested review of the decision on March 19, 2009.  (Tr. 1-4.)

### B.     *Factual History*

#### 1.     Plaintiff's Age, Education, and Work Experience

Plaintiff was born on March 18, 1982, and graduated from high school with a certificate for completion of special education courses.  (Tr. 82, 39-40.)  Plaintiff claimed the onset of the alleged disabilities occurred at the time of her birth.  (Tr. 82.)  She claims to have disabilities due to heart murmur, migraines, weight, breathing problems, allergy, and ankle pain.  (Tr. 94.)  Plaintiff has no past relevant work experience.  (Tr. 45.)

---

[1]The procedural history comes from the transcript of the administrative proceedings filed on October 15, 2009, which is referred to as "Tr."

2.  Plaintiff's Medical Evidence

Medical records from Plaintiff's treatments at Helen Farabee Regional MHMR Centers indicate that Plaintiff suffers from migraine headaches, a heart murmur, and obesity. (Tr. 303.) Psychiatric evaluations demonstrate that Plaintiff suffers from bipolar disorder, visual and auditory hallucinations, depression, and mood swings. (Tr. 304, 324-325.) The records indicate that Plaintiff complains of shortness of breath at times, dizziness, pain in her ankles, and the inability to stand for longer than thirty minutes. (Tr. 187, 87, 91, 94.) The echocardiography report conducted at North Texas Cardiology Center revealed that she has moderate aortic stenosis, systolic murmur, and an apparent bicuspid aortic valve. (Tr. 377-381.)

After an evaluation in June 2006, Consulting Psychologist J. Morris Alexander, Ph.D., found Plaintiff to have borderline intellectual functioning with a learning disability in reading, writing, and arithmetic. (Tr. 258-262.) Plaintiff was also found to be functioning with good social skills and the ability to independently manage basic household finances. *Id.* Consulting Physician G. H. Bennett, M.D., examined Plaintiff in March 2006 and found her to present exogenous obesity, headaches, shortness of breath, and pain in her feet and legs likely due to obesity. (Tr. 186-188.) Plaintiff presented weighing 298 pounds, standing 5'1" in height, short of breath, with limited range of motion in her lower extremities and a heart rhythm without murmur. *Id.* Plaintiff's physical exam was normal except for the problems linked to her obesity. (Tr. 186-188.)

3.  Vocational Evidence

Plaintiff was referred to the Mississippi Department of Rehabilitation Services for a vocational assessment. (Tr. 121.) On June 20, 2006, the vocational specialist concluded that Plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, walk/stand

about six hours in an eight hour work day, and sit about six hours in an eight hour workday. (Tr. 121.) The vocational specialist concluded Plaintiff could climb, balance, stoop, kneel, crouch, and crawl occasionally but never climb ladders, ropes or scaffolds. *Id.* In sum, the vocational specialist reached the conclusion that Plaintiff's residual functioning capacity ("RFC") was light with a mix of exertional and non-exertional restrictions including postural restrictions.[2] (Tr. 123.) Occupations determined to be within the scope of Plaintiff's functional capacity include moisture tester, clipper, and bulb filler. *Id.*

        4.        Plaintiff's Hearing

During the hearing held in front of ALJ Hiltbrand, the medical expert ("ME") Thomas E. Lynn, M.D., testified that Plaintiff's records indicated that she suffers from obesity, foot and leg pain, and shortness of breath. (Tr. 36-37.) Additionally, the ME testified to Plaintiff's history of migraines and history of a learning disability. *Id.* According to the ME, Plaintiff's conditions, individually or in the aggregate, did not meet the level of severity required by any listing under the Act. (Tr. 37.)

A vocational expert ("VE"), Mr. Clifton A. King, Jr., testified at the hearing in response to one hypothetical question posited by the ALJ. (Tr. 44.) The ALJ posed the following question to the VE:

> Please assume we have a hypothetical person the same age as the Claimant, education and of course we're looking at entry level work and we have the following exertional, non-exterional limitations which I will give you at this time...Based on the evidence of record, restrictions as to her daily activities, those would be rated as none. Deficiencies in maintaining social functioning would be none. Deficiencies in concentration, persistence, and pace would be mild. Based on those exertional and

---

[2] The vocational specialist did not mention any mental limitations other than to note generally a mixture of exertional and non-exertional restrictions.

> non-exertional limitations, can this hypothetical individual perform entry level work in the regional or national economy please?

(Tr. 45.) The VE responded that the person could perform jobs in the local and national economy. *Id.* The VE stated the person could perform light, un-skilled jobs such as cafeteria attendant, press operator, and maid/housekeeper. (Tr. 46.) If the person had to miss work for one week monthly due to a migraine, the VE testified the person would not be able to maintain any unskilled jobs with such absenteeism. *Id.*

Plaintiff testified at the hearing that she had migraine headaches requiring her to stay in bed that would last for a week to a month and would occur once a month. (Tr. 40.) She also testified that she gets short of breath after walking down an aisle at Wal-mart and has to rest for thirty minutes afterwards. (Tr. 41.) Plaintiff claimed this has been going on for about four years. *Id.*

### C. *Summary of ALJ's Findings*

On March 21, 2008, the ALJ issued a decision concluding that Plaintiff was not disabled under the Act. (Tr. 8-15.) The ALJ found that Plaintiff had the severe impairments of obesity, borderline intellectual functioning, and bipolar disorder. (Tr. 10.) These impairments or a combination of them were not found to constitute or to medically equal one of the listed impairments under the Act. *Id.* Plaintiff's impairments were found to be a possible, reasonable cause of the alleged symptoms, but Plaintiff's claims regarding the intensity, persistence, and limiting effects were found not to be entirely credible. (Tr. 13.)

The ALJ concluded that Plaintiff has the RFC to occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, walk/stand about six hours in an eight hour work day, and sit about six hours in an eight hour work day. (Tr. 11.) With respect to mental limitations, the ALJ found Plaintiff to have mild restrictions in activities of daily living, mild difficulties in maintaining social

functioning, and moderate difficulties with concentration, persistence, or pace. *Id*. In addition, the ALJ found that Plaintiff can occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 11.) The ALJ noted that the State Agency Medical Consultant ("SAMC") did not fully appreciate Plaintiff's bipolar disorder and borderline intellectual functioning and considered Plaintiff's mental limitations to be greater than those assessed by the SAMC. (Tr. 14.) However, the ALJ reached the same conclusions as the SAMC with respect to Plaintiff's physical abilities. *Id*.

The ALJ noted that Plaintiff had no past work experience for reference, instead asking the VE a hypothetical question about a similarly-situated person's job prospects. (Tr. 14.) However, the ALJ's hypothetical question was about a person with no restrictions in activities of daily living, no restrictions in maintaining social functioning, and mild deficiencies in concentration, persistence and pace. (Tr. 45.) The ALJ ultimately found that Plaintiff's limitations included mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in concentration , persistence, or pace. (Tr. 11.) Relying on the VE's testimony and the hypothetical, the ALJ found that Plaintiff has the ability to perform light, unskilled jobs such cafeteria attendant, press operator, and maid/housekeeper. (Tr. 14-15.) As a result, the ALJ did not find Plaintiff to be disabled within the meaning of the Act. (Tr. 15.)

## II. Legal Standard

A claimant must prove that he or she is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §405(g). The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

Having reviewed the applicable legal standards, the Court turns to the merits of the case.

### III. Issues for Review

The issues for review are 1) whether the differences between the RFC in the ALJ's hypothetical question and the RFC in the ALJ's findings make the hypothetical question defective and 2) if so, was the ALJ's finding of no disability supported by substantial evidence.

### IV. Analysis

The claimant has the burden of proof for the first four steps to prove disability, but at step five the burden shifts to the Commissioner to demonstrate that a significant amount of jobs, which the claimant can perform, exists in the national economy. *Bridges v. Comm'r of Social Security*, 278 F.Supp.2d 797, 803 (N.D. Tex. 2003). The Commissioner can satisfy this burden of proof through VE testimony in response to a hypothetical question. *Id*. A hypothetical question to a VE is defective and produces reversible error if it does not reasonably include all the disabilities of the claimant recognized by the ALJ and the claimant or her representative is not given an opportunity to correct deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Plaintiff contends that the ALJ's hypothetical question to the VE at the hearing failed to reasonably incorporate all the mental limitations recognized in the ALJ's RFC finding because there

8

are significant differences between the RFC of the hypothetical individual considered by the VE and the RFC of the Plaintiff. (Pl. Br. 3.) Plaintiff further contends that as a result the VE testimony does not constitute substantial evidence to support the ALJ's decision. *Id.*

Specifically, Plaintiff highlights that the ALJ's hypothetical question described a person with no restrictions in activities of daily living and no restrictions in social functioning, and mild deficiencies in concentration, persistence, or pace. (Pl. Br. 4.) Plaintiff is correct. In his hypothetical question to the VE, the ALJ referenced an individual with *no* restrictions as to daily living activities, *no* deficiencies in maintaining social functioning and *mild* deficiencies in concentration, persistence, and pace. (Tr. 45.) In his decision, the ALJ stated that Plaintiff has *mild* restriction in activities of daily living, *mild* restriction in social functioning, and *moderate* deficiencies in concentration, persistence, or pace. (Tr. 11 [emphasis supplied].) A significant discrepancy exists between the limitations included in the hypothetical question posited to the VE and the limitations the ALJ found in his decision.

Since a hypothetical question needs to reasonably include all recognized limitations, the ALJ's hypothetical question should have included the non-exertional limitations recognized by the ALJ in his decision. *See Bridges*, 278 F.Supp.2d at 806 (finding a hypothetical question was defective because it failed to reasonably include one of the recognized limitations of the plaintiff). The ALJ should have posited to the VE a hypothetical person with mild restrictions in activities of daily living and social functioning, moderate deficiencies in concentration, persistence, or pace as the ALJ determined in his assessment of Plaintiff's mental limitations. Therefore, the ALJ's only hypothetical question to the VE does not "reasonably include all disabilities of the claimant recognized by the ALJ," rendering it defective. *Bowling*, 36 F.3d at 436.

9

Although a plaintiff has an opportunity at the hearing to correct any recognizable deficiencies in the ALJ's hypothetical question to the VE, a failure to correct a hypothetical question during cross-examination does not automatically salvage an ALJ's reliance on that question. *Guillen v. Astrue*, 584 F.Supp.2d 930, 940 (W.D. Tex. 2008). A defective hypothetical question is not excused by a plaintiff's failure to correct the errors if the Plaintiff is not afforded a "fair" opportunity. *See Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001) (finding that a "fair" opportunity to correct the hypothetical question did not exist as relevant evidence did not turn up until after the hearing). In this case, the ALJ relied on VE testimony given in response to a hypothetical question that included a RFC different from the RFC the ALJ recognized in his decision. Plaintiff could not have known at the hearing that the ALJ's findings as to Plaintiff's RFC would differ significantly from those in the hypothetical question and that the ALJ would rely on the defective hypothetical question. The Court therefore finds that the ALJ's hypothetical question did not reasonably incorporate all the limitations recognized by the ALJ, rendering the question defective and the subsequent VE testimony unable to constitute the substantial evidence required to support the finding of no disability.

Though, in general, a finding of "substantial evidence" can be made absent testimony from the VE, in this case the ALJ expressly stated that his decision regarding the Plaintiff's ability to work, which led to the subsequent finding of "not disabled," was based on the VE's testimony. (Tr. 15.) The ALJ's reliance on the VE testimony given in response to the defective hypothetical question is cause for reversible error. *See Bridges*, 278 F.Supp.2d at 807 (stating that defective hypothetical questions constitute reversible error if the ALJ bases the unfavorable decision on the VE's answers to defective hypothetical questions).

## V. Recommendation

For the foregoing reasons, the Court recommends that the decision of the ALJ be **REVERSED** and **REMANDED**.

**SO RECOMMENDED.** 27th day of July, 2010.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any

party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).